Filed 1/9/24  Simms v. Knapik CA4/2
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

<table>
<tr><td>

TIMOTHY SIMMS,

    Plaintiff and Appellant,

v.

STEVEN M. KNAPIK, et al.,

    Defendants and Respondents.

</td><td>

E077831

(Super.Ct.No. CIVDS1930938)

OPINION

</td></tr>
</table>

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Timothy Simms, in pro. per., for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Dana L. Stenvick, and Nicole F. DeVanon; Lewis Brisbois Brisgaard & Smith, Gregory G. Lynch, and John D. Schumacher for Defendants and Respondents.

In a related appeal, we held that plaintiff and appellant Timothy Simms was not barred by Government Code claim presentation requirements from suing a local health care district for medical negligence.  (*Simms v. Bear Valley Community Healthcare*

1

*District* (June 28, 2022, E075184 [nonpub. opn.].) Simms had presented a claim, though a defective one. (*Ibid.*) By failing to notify Simms of the claim's insufficiencies, the healthcare district had waived their defense that the claim was insufficient, so we permitted Simms to proceed with a complaint. (*Ibid.*)

Simms now appeals the trial court's order granting summary judgment for two doctors who treated him at one of the health care district's facilities. Simms argues the trial court abused its discretion by denying his requests for additional time to conduct discovery, to retain an expert to support his oppositions to the doctors' motions for summary judgment, and to receive certain discovery rulings.

We find no abuse of discretion and affirm the judgment.

## I. BACKGROUND

Bear Valley Community Healthcare District (Bear Valley) "is a local health care district organized under Health and Safety Code section 32000 et seq. On December 8, 2017, Simms was injured in a fall and sought treatment at Bear Valley's emergency room. In December 2017 and January 2018, Simms went to appointments with several Bear Valley medical providers to obtain additional treatment for continuing pain from his injuries." (*Simms v. Bear Valley Community Healthcare District*, *supra*, E075184.) Defendants and respondents Steven M. Knapik, D.O., and Jeffrey D. Orr, M.D., are two of those Bear Valley medical providers.

On December 26, 2017, Knapik treated Simms at Bear Valley's Brenda Boss Family Resource Center, and Orr treated him there on January 18 and January 26, 2018.

2

The gist of Simms's single cause of action, for medical negligence, is that Knapik and Orr both failed to take his complaints of persistent pain and other "physical and mental symptoms" seriously, refused to order additional tests, such as an MRI scan, to discover the source of those symptoms, and failed to prescribe appropriate medication to treat his chronic pain. In July 2018, Simms says he learned of "catastrophic results" shown by an MRI scan of his neck, ordered by a different medical provider, a chiropractor. In Simms's view, articulated in the operative first amended complaint, Knapik and Orr "failed to timely diagnose and properly treat" him, causing "irreparable physical damage," as well as mental and emotional injuries.

Knapik and Orr have different perspectives, as presented in their separate summary judgment motions. During his December 26, 2017 visit with Simms, Knapik reviewed previously taken X-rays and found no evidence of any fractures, dislocations, or other acute injuries. Simms complained of persistent right knee pain, so Knapik examined that knee. He discovered no evidence of swelling or instability. On that basis, Knapik concluded that insurance would be unlikely to approve an MRI. He recommended physical therapy and continued anti-inflammatory medication to treat Simms's "subacute" reported injury. Simms became upset and left the room before Knapik completed his examination.

At his first visit with Orr, Simms complained of persistent and severe pain on his entire right side—ankle, knee, hip, and lower back. Simms also changed his story about what happened during his fall on December 8, 2017. During his first visit to the

emergency room, he had denied hitting his head. Now, he reported he hit his forehead during the fall and, though he did not lose consciousness, he vomited 30 minutes later. He "presently complained of occipital headache, some blurry vision and ringing in his ears as well as clicking of his jaw and difficulty concentrating." Orr noted that X-rays (which had by then been taken twice) and a head CT scan were all normal. Orr referred Simms for an ophthalmology exam, prescribed Meloxicam for pain, and prescribed physical therapy.

At his second visit, Simms told Orr the Meloxicam was not working to control his pain, and requested "something stronger." He also complained of increasing panic attacks, though he did not specify their frequency. He requested a refill of his prescription for Clonazepam, stating that he felt it was "'dangerous'" for him not to have it, and saying he had been taking it "'occasionally' as needed, approximately once per week," but that he had no more left. Orr called the pharmacy, however, and learned Simms had picked up a prescription for 60 tablets of Clonazepam the day before. Orr told Simms he "would be unable to assist him with his main concerns that day" because Simms was "being dishonest." Orr included in Simms's medical records his impression that Simms was engaging in "drug-seeking behavior."

Knapik moved for summary judgment on January 13, 2021, while Orr filed a separate motion for summary judgment on March 9, 2021.[1] Later in March 2021, Simms

_____

[1] Orr's motion was first submitted in February 2021, but the documents were all returned unfiled because they were on compact discs, a format the Superior Court does not accept. Apparently for the same reason, many of Knapik's exhibits were also initially

*[footnote continued on next page]*

4

requested 90-day continuances to oppose both motions. The requests were granted, but Simms was admonished not to request further continuances on the same or similar grounds: his chronic pain and other health issues, and "COVID-related family affairs." The hearing on Knapik's motion was continued to July 6, 2021, while the hearing on Orr's motion was continued to August 5, 2021.

On June 15, 2021, Simms filed an ex parte application for sanctions against Knapik, alleging intentional spoliation of evidence. The next day, after receiving Knapik's written opposition and hearing oral argument, the trial court denied the application.

On June 21, 2021, Simms filed an ex parte application for a 120-day continuance of the hearing on Knapik's summary judgment motion, to allow additional time to prepare his opposition. After a hearing on June 25, 2021, the court denied the request.

Simms did not oppose Knapik's summary judgment motion before the July 6, 2021, hearing. At the hearing, he renewed his request for a continuance. The trial court denied that request, granted Knapik's motion, and entered judgment.

On July 21, 2021, Simms filed two ex parte applications. One asked the court to deem Orr to have admitted the truth of matters specified in Simms's requests for admissions based on Orr's purported failure to respond to those requests. The second requested a 120-day continuance of the hearing on Orr's motion for summary judgment, to allow Simms additional time to prepare his opposition. The trial court initially denied

rejected, though the motion and some supporting documents were filed on January 13, 2021. Knapik's exhibits were resubmitted and filed March 3, 2021.

both applications without prejudice so that a different judge—the one assigned to the case for all purposes, and thus more familiar with the case—could make the decision.

Simms submitted both renewed ex parte applications on August 3, 2021, and they were heard together with Orr's motion for summary judgment on August 5, 2021. Simms did not oppose Orr's motion for summary judgment. The trial court denied Simms's renewed applications, granted Orr's motion, and entered judgment.

## II. DISCUSSION

Simms argues the trial court abused its discretion by denying his continuance requests and his discovery motions. Knapik and Orr disagree, asserting that they believe Simms's appeal is "procedurally deficient," in addition to agreeing with the substance of the trial court's rulings.

We decline to discuss Knapik and Orr's procedural arguments except to note that they are unpersuasive, so we would in any case have to consider Simms's appeal on the merits. We turn, then, to whether Simms has demonstrated any abuse of discretion in the trial court's rulings. We will discuss the discovery motions before turning to the continuance requests. "Discovery orders are generally reviewed for abuse of discretion." (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 772 (*St. Mary*).)

Simms's motion to sanction Knapik for intentional spoliation asserts that Knapik falsified Simms's medical records. Knapik submitted records in support of his motion for summary judgment that include a progress note, documenting Knapik's perception of Simms's December 26, 2017 appointment. The progress note includes the information

6

that it was created contemporaneously with Simms's appointment; dictated on the evening of December 26, 2017, transcribed about two hours later, and electronically signed by Knapik on December 29, 2017. Records Orr submitted in support of his summary judgment motion, however, as well as records that Simms had obtained previously, did not include the progress note. Simms views this inconsistency as a "'smoking gun' and definitive proof . . . that Knapik willfully and intentionally altered" Simms's medical records sometime between March 2020, when Orr received Simms's medical records in response to a subpoena, and June 2020, when Knapik did.

Simms's reasoning does not hold water. The records Knapik used to support his motion were subpoenaed from "Bear Valley Community Health Care District," while Orr used records subpoenaed from "Brenda Boss Family Resource Center." The records Simms acquired himself were not subpoenaed at all, but obtained through several informal requests. There are a number of reasons why requests for records that are similar, but directed to different entities, might result in production of differing sets of documents. Falsification of records by Knapik is not among the most likely reasons, let alone one compelled by the evidence, as Simms would have it. For example, perhaps not all records are routinely transmitted from one entity to the other. Also, sometimes documents are accidentally lost, or accidentally omitted from a production, by the custodian of records (who is not Knapik). The trial court did not abuse its discretion by

finding Simms did not carry his burden of proving Knapik engaged in spoliation of evidence, intentional or otherwise.[2]

The trial court did not err in denying Simms's motion for the court to deem admitted the requests for admission he propounded to Orr, and in fact it would have been error to grant that motion. "[A] propounding party who fails to receive a timely response may move for an order that 'matters specified in the requests' are deemed admitted." (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 978; Code Civ. Proc.[3], § 2033.280, subd. (b).) Nevertheless, "a responding party's service, prior to the hearing on the 'deemed admitted' motion, of substantially compliant responses, will defeat a propounding party's attempt under section 2033.280 to have the RFAs deemed admitted." (*St. Mary*, *supra*, 223 Cal.App.4th at p. 776.)

Orr responded to Simms's requests for admission on time, in December 2020, but only by email. According to Simms, he never received that email. Moreover, he never consented to electronic service. (See former § 1010.6, subd. (a)(2)(A)(ii) [electronic

---

[2] On the eve of oral argument, Simms filed a motion to augment the record with additional versions of his medical records, subpoenaed from several different entities. "'[W]hen reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.'" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) "Augmentation does not function to supplement the record with materials not before the trial court." (*Ibid.*; see Cal. Rules of Court, rule 8.155(a)(1)(A) [augmentation limited to documents "filed or lodged in the case in superior court"].) The motion is therefore denied. Moreover, our reasoning and conclusions here would be the same, even if these documents were added to our record.

[3] Undesignated statutory references are to the Code of Civil Procedure.

service is "authorized if a party or other person has expressly consented to receive electronic service in that specific action"]; see also Cal. Rules of Court, rule 2.251(b)(1).) As such, Orr's email-only service of discovery responses was improper.[4] Orr describes his "failure to serve the responses via U.S. Mail" as "inadvertent."

As Simms concedes, however, he was served by mail with Orr's responses on July 23, 2021. That is before Simms *filed* his renewed motion to have the requests deemed admitted, let alone before the motion hearing. Simms has not argued that Orr's responses were less than substantially compliant in any respect other than their initial service by email. As such, it would have been legal error for the court to grant Simms' motion. (*St. Mary*, *supra*, 223 Cal.App.4th at p. 776 ["'If the party manages to serve its responses before the hearing, the court has no discretion but to deny the motion.'"].)

We also find no abuse of discretion in the trial court's denials of Simms's continuance requests. Section 437c, subdivision (h), allows a party to request that the hearing on a summary judgment motion be continued to allow additional discovery to be completed upon a showing that "facts essential to justify opposition may exist but cannot for reasons stated be presented." "The decision to grant or deny a continuance request under section 437c, subdivision (h), is vested in the trial court's discretion," and we

---

[4] It is debatable whether Orr's use of email service without consent amounts to a failure to respond at all to requests for admissions, properly subject to a motion to have requests deemed admitted, or instead a deficient response, properly subject to a motion to compel. (See *St. Mary*, *supra*, 223 Cal.App.4th at p. 776 [discussing differences between "'deemed admitted'" motions and motions to compel].) The parties do not raise that question and we will not attempt to answer it.

review the trial court's ruling for abuse of discretion. (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152 (*Braganza*.) "Continuance requests under section 437c, subdivision (h), are to be liberally granted." (*Ibid.*)

Nevertheless, as our division has held, lack of diligence may be a ground for denying a party's request for a continuance under section 437c, subdivision (h). (See *Braganza*, *supra*, 67 Cal.App.5th at pp. 154-156 ["a party who seeks a continuance under section 437c, subdivision (h), must show why the discovery necessary to oppose the motion for summary judgment or summary adjudication could not have been completed sooner"]. Some other cases have held on particular facts that lack of diligence may not support denial of a continuance. (See *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 ["when a party submits an affidavit demonstrating that facts essential to justify opposition may exist," lack of diligence may not permit a court to deny a continuance]; *Frazee v. Seely*, *supra*, 95 Cal.App.4th at p. 635 [suggesting in dicta that where certain deposition transcripts could provide evidence that was "imperative" to deciding case, a party's lack of diligence in completing discovery would not permit denying a request for continuance under § 437c, subd. (h)].) This is a case, like *Braganza*, where a trial court was in its discretion to deny a continuance and thus require an opposition. Even when an opposition is ordered, a party can show in the opposition itself that "essential" facts are missing and needed. (See § 437c(h).)

The record shows that Simms did not act with diligence in completing discovery. Simms filed this lawsuit in October 2019. As of June 2021, he had not retained an expert

10

willing to opine in support of his medical negligence claim.  He had not taken or even noticed any depositions.  He had not subpoenaed his medical records, though he had obtained some of them through other means.  He had propounded some written discovery requests, but for months he took no action regarding perceived deficiencies in the responses he received and the actions he finally took—the two failed discovery motions—did not advance the building of his case.  Even after 90-day continuances were granted as to the pending summary judgment motions, Simms was hardly closer to developing evidence sufficient to oppose the pending motions than before the continuances.

Simms fares no better if his requests are viewed through the requirement of good cause, rather than section 437c, subdivision (h).  "When a continuance of a summary judgment motion is not mandatory, because of a failure to meet the requirements of [section 437c, subd. (h)], the court must determine whether the party requesting the continuance has nonetheless established good cause therefor.  That determination is within the court's discretion." (*Lerma*, *supra*, 120 Cal.App.4th at p. 716.)

Of course, often, personal or family medical emergencies suffered by an attorney or self-represented litigant would establish good cause for a continuance.  For example, in *Lerma*, *supra*, 120 Cal.App.4th at p. 716, the court of appeal found the trial court abused its discretion by denying a continuance warranted by an attorney's medical emergency.  The court reasoned: "This is not a case where a party has been dilatory in its efforts and the court needs to seize control of the situation and force the party to engage

11

in diligent pursuit of litigation objectives.  It is simply a case in which the frailties of mankind's physical housing created a brief interference with the efficient resolution of a motion." (*Id.* at p. 718.)

Even so, this case is at least arguably different.  Simms made little progress in conducting discovery for several years, despite previously granted continuances. Moreover, there is reason to doubt that Simms's medical and family circumstances are solely responsible for that delay.  According to Simms, he spent hundreds of hours over several weeks working on his discovery motions, which as discussed above were properly and (from an objective standpoint) predictably denied.  Those hours could have been devoted to other litigation tasks, such as conducting the various items of discovery necessary for a plaintiff's medical negligence case to survive summary judgment.  While it is understandable that non-attorney litigants representing themselves might have difficulty efficiently and strategically allocating their efforts, our Supreme Court has long held self-represented civil litigants to the same standards as attorneys: "Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. [...]  A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)  Perhaps the trial court could have reached a different decision, giving more weight than it did to the various reasons for delay that Simms has stated.  On this record, however, we cannot

say that it was compelled to do so.  Thus, there was no abuse of the trial court's discretion.

## III. DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>RAPHAEL</u>
J.

We concur:

<u>CODRINGTON</u>
Acting P. J.
<u>MENETREZ</u>
J.

13